## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GRANEROS UNIDOS S.A. de C.V., <br> a foreign corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 10-CV-3074 |
| The GSI GROUP LLC, <br> GSI GROUP, INC., <br> GSI INTERNATIONAL and GSI, INC., <br> believed to be an Indiana corporation, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and
Recommendation on Defendant The GSI Group, LLC's Motion to Dismiss
for Failure to Join Necessary and Indispensable Parties and, in turn, Lack
of Subject Matter Jurisdiction (d/e 5) (Motion).[1]  This case concerns grain
silos and related facilities and equipment (collectively Silos) destroyed by a
hurricane in Mexico.  The Plaintiff Graneros Unidos S.A. de C.V.
(Graneros), a Mexican corporation, bought the Silos from Defendant GSI
Group, LLC (GSI).  GSI designed and fabricated the Silos in the United

---

[1]GSI does business under the trade name GSI International.  In January 2009,
GSI assumed the liabilities of The GSI Group, Inc., and The GSI Group, Inc.'s corporate
status has been withdrawn.  Motion, at 2 n.1.

States, and two other Mexican corporations, Ingenieria de Almancenimientos S.A. de C.V. (Ingenieria), and Luseme Ingenieria S.A. de C.V. (Luseme), constructed the prefabricated Silos on site in Mexico.

In September 2006, a hurricane severely damaged the Silos. Graneros brought a diversity action in the Northern District of Illinois, Case No. 09-5712, against GSI, Ingenieria and Luseme (Northern District Action).  Complaint (d/e 1), ¶ 52; Motion, Exhibit A, N.D.Ill. Case No. 09-5712, Plaintiff's First Amended Complaint (Northern District Complaint). The Northern District Court dismissed for improper venue.  Graneros then brought this action in March 2010.

GSI moves to dismiss because Ingenieria and Luseme are necessary parties under Rule 19, but cannot be joined because their joinder as defendants would destroy diversity jurisdiction.  The Court allowed the parties to conduct limited discovery to address the issues raised by the Motion.  For the reasons set forth below, the Court agrees that Ingenieria and Luseme are required to be joined if feasible, but cannot be joined because their presence would destroy diversity subject matter jurisdiction. The Court, however, finds that in equity and good conscience, the matter should not be dismissed, and so recommends that the Motion be denied. See Fed. R. Civ. P. 19(b)(2).

<u>STATEMENT OF FACTS</u>

Graneros runs a grain storage business. In September 2002, Joel Valenzuela, the General Director of Graneros, traveled to Illinois with his cousin Jesus Valenzuela, to meet with GSI president William Branch and other GSI representatives. Jesus Valenzuela apparently works for Graneros, but the parties do not state his position at the company. Luis Pena and Gerardo Navarro accompanied them on this trip. Pena and Navarro were representatives of Ingenieria and Luseme. <u>Plaintiff's Response to Defendant's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties (d/e 7)</u>, Exhibit 1, <u>Declaration of Joel Valenzuela ¶¶ 1-5; Defendant The GSI Group, LLC's Supplemental Brief in Support of its Original Motion to Dismiss for Failure to Join Necessary and Indispensable Parties and in turn Lack of Subject Matter Jurisdiction (d/e 32) (GSI Supplemental Memorandum)</u>, attached <u>Deposition of Joel Valenzuela</u>, at 6, 75-77. According to Joel Valenzuela, Pena owns Luseme and Ingenieria. <u>Deposition of Joel Valenzuela</u>, at 79. Joel Valenzuela states that during these meetings in 2002, the GSI executives, "firmly recommended against my preference to purchase domes warehouses, encouraging me, instead to purchase their silos, insisting that the silos were strong enough to handle hurricanes in southern Mexico." <u>Declaration of Joel Valenzuela ¶ 10.</u>

In October 2003, Graneros contracted with GSI for the purchase of Silos in Obispo, Mexico.  In May 2005, Graneros contracted with GSI for enlargement of the facilities in Obispo, and for additional Silos in Quila, Mexico.  Graneros paid a total of $2,742,000.00 for the Silos at these locations.  <u>Complaint</u>, ¶¶ 12-13.  Les Garcia, GSI's sales manager for Latin America, negotiated sale of the Silos directly with Joel Valenzuela.  Pena and Navarro were not involved in these negotiations.  <u>Joel Valenzuela Deposition</u>, at 16, 87-89.

Graneros signed separate contracts with Ingenieria and Luseme for construction of the Silos on site.  Joel Valenzuela understood that Ingenieria and Luseme were the exclusive contractors for GSI.  Joel Valenzuela understood that Ingenieria and Luseme personnel performed the construction.  Valenzuela stated that GSI sent technicians to supervise the installation of grain dryers included in the purchase of the Silos.  <u>Joel Valenzuela Deposition</u>, at 64-65.  Graneros made separate payments to GSI and Ingenieria and Luseme.  <u>Joel Valenzuela Deposition</u>, at 65-66.

Jesus Valenzuela viewed Ingenieria and Luseme, and Pena and Navarro, to be agents or representatives of GSI.  <u>Supplemental Brief Regarding Defendants' Motion to Dismiss for Failure to Join Necessary and Indispensable Parties and, in turn, Lack of Subject Matter Jurisdiction (d/e 41) (Graneros Supplemental Memorandum)</u>, Exhibit 3, <u>Deposition</u>

Excerpts of Jesus Antonio Valenzuela, at 54.  Pena and Navarro were authorized dealers of GSI and wore GSI logos on their shirts.  Jesus Valenzuela understood Pena "always was the representative, handled the representation of GSI as the builder."  Jesus Valenzuela Deposition Excerpts, at 56.

Both Obispo and Quila were regularly subjected the effects of hurricanes that hit the west coast of Mexico.  Joel Valenzuela stated in his deposition that GSI representatives including Garcia, as well as Pena and Navarro, all represented that GSI Silos were hurricane proof.  He stated that the documentation stated that the Silos could withstand winds of 120 miles per hour; however, the representatives told him that the number was a very conservative figure.  Joel Valenzuela Deposition, at 10.  He stated that both GSI corporate representatives and Pena and Navarro told him that the Silos would withstand any hurricane.  Joel Valenzuela Deposition, at 8-11, 12-14, 24-32.

On September 14, 2006, Hurricane Lane hit the west coast of Mexico and destroyed Graneros' grain facilities in Obispo and Quila, including the Silos.  Joel Valenzuela contacted GSI to secure replacements, but the negotiations were unsuccessful.  Joel Valenzuela Deposition, at 68

On October 2, 2009, Graneros brought the Northern District Action against GSI, Ingenieria, and Luseme.  GSI moved to dismiss for improper

venue and for lack of jurisdiction. GSI asserted that the Court had no

diversity jurisdiction because there was a foreign plaintiff and a group of

defendants consisting a United States citizen and foreign citizens. On

January 6, 2010, The Northern District dismissed for improper venue. On

March 25, 2010, Graneros filed this action against GSI only. The action is

a diversity action. Graneros asserts state law claims for breach of contract,

breach of warranty, consumer fraud under the Illinois Consumer Fraud

Deceptive Business Practices Act (815 ILCS 5/10a), negligence, and

punitive damages, along with attorney fees and prejudgment interest.

Complaint, at 5-8. Graneros asserted the same claims in the Northern

District Action. See Northern District Complaint, at 5-8.

## ANALYSIS

GSI now moves to dismiss because Ingenieria and Luseme are

necessary parties that cannot be added because the Court would lack

jurisdiction if they were added. GSI, therefore, asks the Court to dismiss

this action. The Court agrees that Graneros cannot join Ingenieria and

Luseme as additional defendants. The diversity jurisdiction statute does

not grant the Court jurisdiction to hear cases between a foreign plaintiff and

a group of defendants consisting of United States citizens and foreign

citizens. 28 U.S.C. § 1332; Allendale Mut. Ins. Co. V. Bull Data Systems,

Inc., 10 F.3d 425, 428 (7th Cir. 1993). The issue, therefore, is whether

Ingenieria and Luseme are necessary and if so whether the case should be dismissed.

Rule 19 governs joinder of necessary parties. Rule 19 refers to a necessary party as a "person required to be joined if feasible." Rule 19(a) states:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The Court must consider the factual, legal, and procedural context of the particular litigation when applying these factors to determine whether a party is required to be joined. The Court must weigh

in a pragmatic manner the plaintiff's choice of forum, the ability of this Court to provide complete relief of the claims before it, and the ability of this Court to avoid adverse effects of a judgment on the parties and the nonparty if the case is allowed to proceed without joinder of the nonparty.  See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 108-10, 118-25 (1968); Soberay Machine & Equipment Co. v. MRF Ltd., Inc., 181 F.3d 759, 765 (6th Cir. 1999).   The Court may go outside the pleadings and look to extrinsic evidence to resolve these questions.  Davis Companies v. Emerald Casino, Inc., 268 F.3d 477, 480 n. 4 (7th Cir. 2001).

In this case, Ingenieria and Luseme are required to be joined if feasible.  Ingenieria and Luseme have interests directly relating to the construction of the Silos.  Ingenieria and Luseme signed separate contracts with Graneros for the construction of the Silos and constructed the Silos.  Graneros alleged a breach of contract in the construction of the Silos, and so, put these contracts at issue.  As parties to the construction contracts, Ingenieria and Luseme have "a commercial stake in the outcome of this litigation.  It therefore would appear beyond dispute that [Ingenieria and Luseme are] necessary part[ies] under Rule 19(a)."  U.S. ex rel. Hall v. Tribal Development Corp., 100 F.3d 476, 479 (7th Cir. 1996).

Ingenieria and Luseme's interests could also possibly be impaired or impeded by virtue of their relationship with GSI.  Ingenieria and Luseme

were authorized dealers of GSI and represented GSI in the transaction as its dealers.  Pena and Navarro traveled with Joel Valenzuela to Illinois to meet with GSI representative, and according to Joel Valenzuela, both GSI employees and Pena and Navarro represented that GSI silos were hurricane proof in order to induce Graneros to buy the Silos.  This evidence may provide some basis for finding that Ingenieria and Luseme were in privity with GSI, at least with respect to the marketing of the Silos.  See Agolf, LLC v. Village of Arlington Heights, 409 Ill.App.3d 211, 220, 946 N.E.2d 1123, 1132 (Ill. App. 1st Dist. 2011) ('[P]rivity exists between a party to a prior suit and a nonparty when the party to the prior suit 'adequately represent[ed] the same legal interests' of the nonparty").  If so, then a final judgment in this case could have preclusive effect under the doctrines of collateral estoppel or res judicata.  See Nowak v. St. Rita High School, 197 Ill.2d 757, 389-90, 757 N.E.2d 471, 477 (Ill. 2001).

GSI is also at some risk of inconsistent obligations if Ingenieria or Luseme are not included in the action.  GSI could prevail in this action, but Ingenieria and Luseme could later seek indemnification from GSI if Graneros brought a separate action against them in Mexico for faulty construction.  GSI can protect itself from possible inconsistent or multiple liabilities by filing third party actions against Ingenieria and Luseme for contribution or indemnity.  See Pasco International (London) Ltd. v.

Stenograph Corp., 637 F.2d 496, 502 (7ᵗʰ Cir. 1980).[2]  The third party

action would not destroy diversity subject matter jurisdiction.  Fidelity and

Deposit Co. Of Maryland v. City of Sheboygan Falls, 713 F.2d 1261, 1266

(7ᵗʰ Cir. 1983).  GSI may need to act promptly, however, since the Illinois

statute of limitations for contribution actions is two years from the date of

service of the underlying action.  735 ILCS 5/13-204(b).  GSI waived

service on April 15, 2010.  Acceptance and Waiver of Service (d/e 4).

Graneros argues that Ingenieria and Luseme are not required to be

joined because Ingenieria and Luseme's involvement in the transaction

was sufficiently separate from GSI that their presence is not required.

Graneros notes that GSI signed a separate contract for design and

fabrication of the Silos.  If Graneros limited its claim to design and

fabrication of the materials, then Ingenieria and Luseme might not be

---

[2]The Court assumes that Ingenieria and Luseme would be subject to the
personal jurisdiction of the Court.  The parties have not addressed this issue; however,
Graneros named Ingenieria and Luseme in the Northern District Action, and so, must
have had a good faith basis for believing that the courts of Illinois would have personal
jurisdiction over them.  A federal district court in Illinois exercises the same personal
jurisdiction as an Illinois court in diversity cases. Jennings v. AC Hydraulic A/S, 383
F.3d 546, 548 (7ᵗʰ Cir. 2004).  GSI similarly argues that Graneros can secure relief in
state court if this matter is dismissed.  See GSI Supplemental Memorandum, at 8.
Illinois requires joinder of necessary parties.  See City of Evanston v. Regional
Transportation Authority, 209 Ill.App.3d 447, 454-55, 568 N.E.2d 244, 248 (Ill.App. 1ˢᵗ
Dist. 1991). Thus, Graneros might need to join Ingenieria and Luseme in any state court
proceeding.  GSI, therefore, may also have a good faith basis to believe that Ingenieria
and Luseme would be subject to the personal jurisdiction of Illinois courts.  In addition,
Pena and Navarro came to Illinois in 2002 with Joel Valenzuela to visit GSI as part of
the marketing effort.  There, thus, may be some basis for personal jurisdiction. See
Jennings, 383 F.3d at 549.

required to be joined.  <u>See</u> <u>Davis</u>, 268 F.3d at 484 (nonparty that was not a

party to contract at issue was not required to be joined).  Graneros,

however, also alleges a claim for breach of contract based on the alleged

faulty construction of the Silos.  <u>Complaint</u>, ¶¶ 28-29.  Ingenieria and

Luseme signed the construction contracts.  Clearly these two companies

have interests in the alleged breach of the contracts they signed.  <u>See</u> <u>Hall</u>,

100 F.3d at 479.

In the alternative, Graneros argues that Ingenieria and Luseme are

not needed because they were agents of GSI.  Graneros argues GSI can

protect its interests and the interests of Ingenieria and Luseme in this

action because GSI is vicariously liable for their actions.  A principal is

generally liable for the acts of an agent done in the scope of the agency,

but is not liable for the acts of an independent contractor unless the

principal ordered and directed the wrongful action.  <u>Gomien v. Wear-Ever</u>

<u>Aluminum, Inc.</u>, 50 Ill.2d 19, 21, 276 N.E.2d 336, 338 (Ill. 1971).  An

independent contractor is one who is hired to produce a given result, but

the employer or principal does not control or direct the manner and means

by which the contractor accomplishes the result.  <u>Horwitz v. Holabird &</u>

<u>Root</u>, 212 Ill.2d 1, 13, 816 N.E.2d 272, 279 (Ill. 2004).  An independent

contractor can also be an agent depending on the nature of the

relationship.  Vicarious liability can run to the principal for the acts of the independent contractor/agent done within the scope of the agency.  Id.

The evidence presented tends to show that Ingenieria and Luseme may have had some agency relationship with GSI during the marketing phase of the transaction.  Ingenieria and Luseme were authorized GSI dealers.  Pena and Navarro accompanied Joel and Jesus Valenzuela to Illinois to meet with GSI representatives.  The evidence indicates that the agency, if it existed, was fairly limited.  Joel Valenzuela dealt directly with GSI sales manager Garcia in negotiating the sale of the Silos.  Graneros executed sales contracts directly with GSI through Garcia.  Thus, Pena and Navarro did not appear to have authority to bind GSI.  Graneros presents little evidence of any agency in the construction of the Silos.  Graneros executed separate construction contracts directly with Ingenieria and Luseme.  Ingenieria and Luseme personnel constructed the Silos.  GSI personnel supervised the construction of the grain dryers, but otherwise were not involved in the construction.  Given the evidence of a possible dual position for Ingenieria and Luseme as agent for some purposes and independent contractor for others, Graneros may be able to prove some vicarious liability for acts done within the scope of an agency.  The potential for vicarious liability would seem to arise in the claims based on the alleged

marketing misrepresentations about the ability of the Silos to withstand hurricanes.

Graneros, however, did not limit its complaint to claims based on marketing misrepresentations. Graneros alleged claims for breach of the construction contracts. Graneros does not present sufficient evidence to show that an agency relationship may have existed in connection with the construction of the Silos. Thus, GSI's presence in the case does not protect Ingenieria and Luseme's interests in the breach of contract claims.

Graneros argues that GSI will be liable for the acts of Ingenieria and Luseme under the doctrine of apparent agency. The doctrine of apparent agency is an estoppel doctrine. Graneros must present evidence that GSI took some action or made some representation to Graneros or to the public generally to give the impression that Ingenieria and Luseme were its agents in the construction of the Silos. O'Banner v. McDonald's Corp., 173 Ill.2d 208, 213, 670 N.E.2d 632, 634-35 (Ill. 1996). Graneros has no such evidence. Again, Graneros signed separate construction contracts with Ingenieria and Luseme; Ingenieria and Luseme personnel constructed the Silos; and Graneros paid Ingenieria and Luseme directly. All this evidence shows an independent contractor relationship. Graneros presents evidence from internal GSI documents and emails, and statements from Pena and Navarro to show apparent agency. The internal

documents do not prove that GSI made any representations to Graneros or the public.  The statements by Pena and Navarro cannot be attributed to GSI to prove apparent authority; the statements or actions must come from GSI.  <u>See</u> <u>Id.</u>  Graneros, thus, fails to prove any apparent agency in connection with the construction of the Silos.

Graneros argues that regardless of any agency, the interests GSI and Ingenieria and Luseme are so similar that GSI can protect the interests of Ingenieria and Luseme.  The Court disagrees.  The cases on which Graneros relies involves situations in which the nonparty is an employee or former employee or a wholly owned subsidiary of a party.  <u>See</u> <u>e.g.</u>, <u>Pasco</u>, 637 F.2d at 499 (nonparty was a former employee); <u>Extra Equipamentos E Exportacao Ltda. v. Case Corp.</u>, 361 F.3d 359, 360 (7th Cir. 2004) (wholly owned subsidiary).  Ingenieria and Luseme are not subsidiaries of GSI.  Joel Valenzuela states that Pena owns Ingenieria and Luseme, not GSI.  Ingenieria and Luseme signed separate contracts with Graneros for construction of the facilities, and so, have separate bases for liability.

Moreover, Ingenieria and Luseme's interests may be adverse to GSI.  Ingenieria and Luseme, if joined, might want to assert GSI's faulty design or fabrication caused the failure of the Silos.  GSI may want to assert the faulty construction by Ingenieria and Luseme caused the failure of the Silos.  Graneros cites certain statements by GSI personnel to try to show

that GSI has no basis to claim faulty construction.  See Graneros

Supplemental Memorandum, at 2-3.  The Court has reviewed this evidence

and finds it unpersuasive.  The statements do not resolve the possibility

that GSI might claim that faulty construction by Ingenieria and Luseme

caused the Silos' failure.  In light of the risk of conflicts in their possible

defenses, GSI cannot protect the interests of Ingenieria and Luseme.

Ingenieria and Luseme are parties that are required to be joined under

Rule 19(a).  This Court, however, cannot order joinder of Ingenieria and

Luseme because joinder would destroy subject matter jurisdiction.

This Court, therefore, must determine in "equity and good

conscience" whether to dismiss the action or allow the action to proceed

without the missing parties.  Fed. R. Civ. P. 19(b).  This is again a fact

specific analysis.  See Provident Tradesmens Bank & Trust Co.,

390 U.S. at 116-19. Rule 19(b) states:

> (b)  When Joinder Is Not Feasible. If a person who is required
> to be joined if feasible cannot be joined, the court must
> determine whether, in equity and good conscience, the
> action should proceed among the existing parties or
> should be dismissed. The factors for the court to consider
> include:
>
> (1)  the extent to which a judgment rendered in the
> person's absence might prejudice that person or the
> existing parties;
>
> (2)  the extent to which any prejudice could be lessened
> or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). If the Court finds that the matter should not proceed, the nonparty is deemed to be indispensable. <u>Moore v. Ashland Oil, Inc.</u>, 901 F.2d 1445, 1447 (7th Cir. 1990).

The first three factors in Rule 19(b) weigh against continuing the action. As explained above, a judgment could prejudice Ingenieria and Luseme because they are parties to the construction contracts at issue. Ingenieria and Luseme may also be prejudiced if they are found to be in privity with GSI. The absence of Ingenieria and Luseme may also limit the ability of the Court to give Graneros complete relief. If faulty construction caused the failure of the Silos, the Court may not be able to grant relief to Graneros on the breach of contract claim unless it can prove a basis to impose vicarious liability on GSI. If Graneros cannot establish that GSI should be liable on any of its claims, then the Court may not be able to afford any relief to Graneros.

The Court may also have difficulty lessening or avoiding the prejudice. The Court could limit the breach of contract and negligence claims to the issues of faulty design and fabrication by GSI and avoid the issue of faulty construction. Graneros, however, may want to try to show that GSI should be vicariously liable for faulty construction. The damages for the consumer fraud claim also might include faulty construction. The alleged misrepresentations could relate to both the purchase of the Silos from GSI and the construction by Ingenieria and Luseme. Limiting the case to faulty design and fabrication, thus, may limit Graneros' ability to pursue all theories of recovery against GSI. These concerns demonstrate potential problems that may be raised by continuing the case without the presence of Ingenieria and Luseme. On the other hand, the possible prejudice to GSI from inconsistent obligations can avoided if GSI files a third party action for contribution and indemnity against Ingenieria and Luseme.

The fourth factor weighs heavily against dismissal. If the case is dismissed, Graneros will have no remedy because all of Graneros' claims will be barred by the statutes of limitations. This Court sitting in diversity applies the statutes of limitations of the state in which it sits, Illinois. Malone v. Bankhead Enterprises, Inc., 125 F.3d 535, 538 (7th Cir. 1997). Graneros' contract and warranty claims are subject to a four year statutes

of limitations on construction actions or actions on the sale of goods.

735 ILCS 5/13-214 or 810 ILCS 5/2-715.   The consumer fraud claim is

subject to a three-year statute of limitations.  815 ILCS 5/10a(e).  The claim

denominated as punitive damages could, possibly, be considered a

common law fraud claim.  If so, the statute of limitations is five years.

735 ILCS 5/13-205.  The statute is also five years on the negligence claim.

Id.  All of these statutes of limitations have run since the causes of action

accrued in September 2006.

GSI argues that Graneros can refile this action in state court.  See

GSI Supplemental Memorandum, at 8 ("Plaintiff has ample opportunity to

pursue this cause of action in State Court . . . .  That is, this is not a case

where dismissing the case from Federal Court would terminate the

jurisdiction in its entirety.").  The Court disagrees.  It is true that Illinois

authorizes a party to refile an action within one year after dismissal from

federal court.  735 ILCS 5/13-217.  Graneros, however, already refiled this

action after dismissal of the Northern District Action.  Section 5/13-217 only

gives a party one opportunity to refile dismissed claims, even if the claims

are still not otherwise barred by the applicable statutes of limitations.

Timberlake v. Illini Hospital, 175 Ill.2d 159, 163-64, 676 N.E.2d 634, 636

(Ill. 1997); Flesner v. Youngs Development Co., 145 Ill.2d 252, 254, 582

N.E.2d 720, 721 (Ill. 1991) (second dismissal of claims barred refiling a

third time even though the otherwise applicable statute of limitations had not run).  Graneros has used up its <u>one</u> opportunity to refile its claims. Graneros' claims would be barred if this action is dismissed.

The lack of an alternate forum is "a critical consideration."  <u>Pasco</u>, 637 F.2d at 500.  The Seventh Circuit explained, "If the plaintiff's complaint is dismissed and there is no other court having jurisdiction over the parties as well as over the absent person, the plaintiff's interest in having the federal forum will strongly influence a court to find that the absent person was not indispensable."  <u>Id.</u>  Thus, Graneros' inability to seek relief in state court weighs heavily in favor of allowing this action to continue without Ingenieria and Luseme.

The Seventh Circuit, however, has also stated that a party, "should not be entitled to a federal forum merely because they waited too long to file their complaints in state court."  <u>Moore v. Ashalnd Oil, Inc.</u>, 901 F.2d 1445, 1448 (7th Cir. 1990) (citing <u>Cloverleaf Standardbred Owners Association, Inc. v. National Bank of Washington</u>, 699 F.2d 1274, 1279 (D.C. Cir. 1983)).  The <u>Moore</u> case, however, involved a situation where a parallel state court action was filed first.  Some of the plaintiffs in the state court action filed the federal action, but omitted the non-diverse parties who were plaintiffs in the state action.  <u>Moore</u>, 901 F.2d at 1446.  The state court action was still pending when the federal action was dismissed; thus,

the federal plaintiffs had a remedy in the state court proceeding.  Id. at 1448.  No such parallel proceeding exists here.

Moreover, the Seventh Circuit cited the D.C. Circuit's decision is Cloverleaf with approval.  In Cloverleaf, the statute of limitations ran while the case was on appeal.  Cloverleaf, 699 F.2d at 1279.  The D.C. Circuit stated that the running of the statute while the appeal is pending is not a factor under Rule 19(b).  Id.  The D.C. Circuit, however, also stated, "[W]here a plaintiff 'will not have an adequate remedy elsewhere' because the statute of limitations has run, district courts should ordinarily retain the case and not dismiss it pursuant to Rule 19(b)."  Id., at 1279 (quoting Park v. Didden, 695 F.2d 626, 631 n.13 (D.C. Cir. 1982)).   Given that the Seventh Circuit cited Cloverleaf with approval, it seems clear that the comment in Moore about the statute of limitations referred to the running of the statute while the matter is on appeal.  The Moore decision also relied significantly on the fact that there was a parallel state proceeding in which the plaintiffs in that case could secure relief.

The fourth factor in this case is controlled by the teachings in Pasco and Cloverleaf that the lack of alternate forum is a "critical consideration" and that if the statute of limitations has run, the Court "should ordinarily retain the case and not dismiss it pursuant to Rule 19(b)."  Pasco, 637 F.2d

at 500; Cloverleaf, 699 F.2d at 1279.  Thus, the fourth factor weighs heavily in favor of allowing this case to proceed in this Court.

In weighing all of the relevant factors, the Court in equity and good conscience finds that the action should proceed.  Graneros lacks any alternate remedy because of the running of the statutes of limitations.  GSI may also protect itself from possible inconsistent or multiple obligations by filing a third party action for contribution or indemnity against Ingenieria and Luseme.  This alternative is not perfect because this Court still cannot provide complete relief for Graneros if liability runs only to Ingenieria or Luseme.  Dismissal, however, provides no possibility of a remedy.  The Court finds this alternative to be far worse.  The Court, therefore, recommends that the action should proceed.

THEREFORE, this Court recommends that Defendant The GSI Group, LLC's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties and, in turn, Lack of Subject Matter Jurisdiction (d/e 5) should be DENIED.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file a timely objection

will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.


ENTER:     March 29, 2012


<em>s/ Byron G. Cudmore</em><br>
BYRON G. CUDMORE<br>
UNITED STATES MAGISTRATE JUDGE