IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| GRANEROS UNIDOS S.A. de C.V., a foreign corporation,    ) | |
| ) | |
|    Plaintiff,    ) | |
| ) | |
|    v.    ) | No. 10-CV-3074 |
| ) | |
| THE GSI GROUP LLC, GSI GROUP, INC., GSI INTERNATIONAL and GSI, INC., believed to be an Indiana corporation,    ) | |
| ) | |
|    Defendants.    ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on the Report and

Recommendation (d/e 43) entered by Magistrate Judge Byron G.

Cudmore.  Defendant, The GSI Group, LLC (GSI), filed its Response

and Objection to the Report and Recommendation (Objection) (d/e 47).

<u>See</u> 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).  Plaintiff, Graneros

Unidos S.A. de C.V., has responded to GSI's Objection.

In the Report and Recommendation, the Magistrate Judge

recommends denying GSI's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties, and in turn, Lack of Subject Matter Jurisdiction (Motion) (d/e 5).  This Court reviews <u>de novo</u> any part of the Report and Recommendation that has been properly objected to.  28 U.S.C. § 636(b)(1)(c).  Because the Court finds that in equity and good conscious this matter should proceed, the Court overrules the Objections and adopts the Magistrate Judge's Report and Recommendation.

## <u>BACKGROUND</u>

GSI has objected to the Magistrate Judge's Report and Recommendation.  GSI does not object to any of the facts set forth in the Report and Recommendation.  Instead, GSI objects only to the recommendation that this case not be dismissed for Graneros's failure to join an indispensable party.

### A.  Relevant Facts

As neither party has objected to any of the facts as set forth in the Report and Recommendation, the Court will repeat them verbatim.

This case concerns grain silos and related facilities and equipment

(collectively Silos) destroyed by a hurricane in Mexico.  The Plaintiff Graneros Unidos S.A. de C.V. (Graneros), a Mexican corporation, bought the Silos from Defendant GSI Group, LLC (GSI).  GSI designed and fabricated the Silos in the United States and two other Mexican corporations, Ingenieria de Almancenimientos S.A. de C.V. (Ingenieria), and Luseme Ingenieria S.A. de C.V. (Luseme), constructed the prefabricated Silos on site in Mexico.

In September 2006, a hurricane severely damaged the Silos.  In September 2009, Graneros brought a diversity action in the Northern District of Illinois, Case No. 09-5712, against GSI, Ingenieria and Luseme (Northern District Action).  Complaint (d/e 1), ¶ 52; Motion, Exhibit A, N.D.Ill. Case No. 09-5712, Plaintiff's First Amended Complaint (Northern District Complaint).  The Northern District Court dismissed for improper venue.  Graneros then brought this action in March 2010.

Graneros runs a grain storage business.  In September 2002, Joel Valenzuela, the General Director of Graneros, traveled to Illinois with his

cousin Jesus Valenzuela, to meet with GSI president William Branch and other GSI representatives.  Jesus Valenzuela apparently works for Graneros, but the parties do not state his position at the company. Luis Pena and Gerardo Navarro accompanied them on this trip.  Pena and Navarro were representatives of Ingenieria and Luseme.  <u>Plaintiff's Response to Defendant's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties (d/e 7)</u>, Exhibit 1, <u>Declaration of Joel Valenzuela</u> ¶¶ 1-5; <u>Defendant The GSI Group, LLC's Supplemental Brief in Support of its Original Motion to Dismiss for Failure to Join Necessary and Indispensable Parties and in turn Lack of Subject Matter Jurisdiction (d/e 32) (GSI Supplemental Memorandum)</u>, attached <u>Deposition of Joel Valenzuela</u>, at 6, 75-77.  According to Joel Valenzuela, Pena owns Luseme and Ingenieria. <u>Deposition of Joel Valenzuela</u>, at 79.  Joel Valenzuela states that during these meetings in 2002, the GSI executives, "firmly recommended against my preference to purchase domed warehouses, encouraging me, instead to purchase their silos, insisting that the silos were strong enough to handle hurricanes in southern Mexico."

Declaration of Joel Valenzuela ¶ 10.

In October 2003, Graneros contracted with GSI for the purchase of Silos in Obispo, Mexico.  In May 2005, Graneros contracted with GSI for enlargement of the facilities in Obispo and for additional Silos in Quila, Mexico.  Graneros paid a total of $2,742,000 for the Silos at these locations.  Complaint, ¶¶ 12-13.  Les Garcia, GSI's sales manager for Latin America, negotiated sale of the Silos directly with Joel Valenzuela.  Pena and Navarro were not involved in these negotiations.  Joel Valenzuela Deposition, at 16, 87-89.

Graneros signed separate contracts with Ingenieria and Luseme for construction of the Silos on site.  Joel Valenzuela understood that Ingenieria and Luseme were the exclusive contractors for GSI.  Joel Valenzuela understood that Ingenieria and Luseme personnel performed the construction.  Valenzuela stated that GSI sent technicians to supervise the installation of grain dryers included in the purchase of the Silos.  Joel Valenzuela Deposition, at 64-65.  Graneros made separate payments to GSI and Ingenieria and Luseme.  Joel Valenzuela

Deposition, at 65-66.

Jesus Valenzuela viewed Ingenieria and Luseme, and Pena and Navarro, to be agents or representatives of GSI.  Supplemental Brief Regarding Defendants' Motion to Dismiss for Failure to Join Necessary and Indispensable Parties and, in turn, Lack of Subject Matter Jurisdiction (d/e 41) (Graneros Supplemental Memorandum), Exhibit 3, Deposition Excerpts of Jesus Antonio Valenzuela, at 54.  Pena and Navarro were authorized dealers of GSI and wore GSI logos on their shirts.  Jesus Valenzuela understood Pena "always was the representative, handled the representation of GSI as the builder."  Jesus Valenzuela Deposition Excerpts, at 56.

Both Obispo and Quila were regularly subjected to the effects of hurricanes that hit the west coast of Mexico.  Joel Valenzuela stated in his deposition that GSI representatives including Garcia, as well as Pena and Navarro, all represented that GSI Silos were hurricane proof.  He stated that the documentation stated that the Silos could withstand winds of 120 miles per hour; however, the representatives told him that

the number was a very conservative figure.  Joel Valenzuela Deposition, at 10.  He stated that both GSI corporate representatives and Pena and Navarro told him that the Silos would withstand any hurricane.  Joel Valenzuela Deposition, at 8-11, 12-14, 24-32.

On September 14, 2006, Hurricane Lane hit the west coast of Mexico and destroyed Graneros' grain facilities in Obispo and Quila, including the Silos.  Joel Valenzuela contacted GSI to secure replacements, but the negotiations were unsuccessful.  Joel Valenzuela Deposition, at 68.

On October 2, 2009, Graneros brought the Northern District Action against GSI, Ingenieria, and Luseme.  GSI moved to dismiss for improper venue and for lack of jurisdiction. GSI asserted that the Court had no diversity jurisdiction because there was a foreign plaintiff and a group of defendants consisting of a United States citizen and foreign citizens.  On January 6, 2010, the Northern District dismissed for improper venue.  On March 25, 2010, Graneros filed this action against GSI only.  The action is a diversity action.  Graneros asserts state law

claims for breach of contract, breach of warranty, consumer fraud under the Illinois Consumer Fraud Deceptive Business Practices Act (815 ILCS 5/10a), negligence, and punitive damages, along with attorney fees and prejudgment interest.  <u>Complaint</u>, at 5-8.  Graneros asserted the same claims in the Northern District Action. <u>See</u> <u>Northern District Complaint</u>, at 5-8.

### B.  Magistrate Judge Recommends Denying Motion to Dismiss

The Magistrate Judge agreed with GSI that Ingenieria and Luseme are required to be joined if feasible, but cannot be joined because their presence would destroy diversity subject matter jurisdiction.  However, after analyzing the factors in Rule 19(b)(2) of the Federal Rules of Civil Procedure, the Magistrate Judge determined that in equity and good conscience, the matter should not be dismissed and therefore recommended that the Motion be denied.  <u>Report and Recommendation</u>, at 2, <u>citing</u> Fed. R. Civ. P. 19(b).  The Magistrate Judge found especially important that Graneros would have no remedy if the case were dismissed because all of Graneros' claims would be barred by the statute

of limitations.  <u>Report and Recommendation</u>, at 17.

<u>ANALYSIS</u>

GSI argues that Graneros failed to join Ingeniera and Luseme as necessary and indispensable parties and, therefore, this matter must be dismissed pursuant to Rule 19.  Graneros disagrees and contends that even if Ingenieria and Luseme are required parties under Rule 19(a), the factors in Rule 19(b) favor allowing the action to proceed.

"The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'"  <u>Askew v. Sheriff of Cook County, Ill.</u>, 568 F.3d 632, 634 (7th Cir. 2009), <u>quoting</u> <u>Moore v. Ashland Oil, Inc.</u>, 901 F.2d 1445, 1447 (7th Cir. 1990).  A court analyzing a motion to dismiss based on Rule 19 for the failure to join uses a two-step inquiry.  <u>Davis Cos. v. Emerald Casino, Inc.</u>, 268 F.3d 477, 481 (7th Cir. 2001).  The first step is to identify the "persons required to be joined if feasible."  <u>Askew</u>, 568 F.3d at 635.  Rule 19(a)(1) sets forth who is a "required party", and states as follows:

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

    (A) in that person's absence, the court cannot accord complete relief among existing parties; or

    (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

        (i) as a practical matter impair or impede the person's ability to protect the interest; or

        (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

The Magistrate Judge concluded that Ingenieria and Luseme were "required parties", in part because: (1) Ingenieria and Luseme have interests directly relating to the construction of the Silos and have a commercial stake in the outcome of this litigation; (2) their interests could possibly be impaired or impeded by virtue of their relationship with GSI; (3) GSI is at some risk of inconsistent obligations if Ingenieria and

Luseme are not included in this action[1]; and (4) Ingeniera and Luseme

may have interests that are adverse to GSI.  <u>Report and

Recommendation</u>, at 8-14.  Ultimately, the Magistrate Judge concluded

that "[i]n light of the risk of conflicts in their possible defenses, GSI

cannot protect the interests of Ingenieria and Luseme" and that

"Ingeniera and Luseme are parties required to be joined under Rule

19(a)." <u>Id.</u> at 15.  However, because joinder of Ingeniera and Luseme

would destroy diversity, the Magistrate Judge concluded the Court

cannot order their joinder.  <u>Id.</u>; <u>see also</u> <u>Extra Equipamentos E

Exportacao LTDA. v. Case Corporation</u>, 361 F.3d 359, 361 (7th Cir.

2004) ("The diversity jurisdiction does not extend to a suit in which

there is a U.S. citizen on only one side of the suit and foreign parties on

both sides.").

    The parties do not contest the Magistrate Judge's conclusion that

Ingenieria and Luseme are "required parties" under 19(a).  Instead, the

---

[1] The Magistrate Judge noted that GSI could protect itself from possible inconsistent or multiple liabilities by filing a third party complaint against Ingeniera and Luseme.  As will be noted below, GSI filed a third-party complaint against Ingeniera and Luseme.

parties focus their arguments on the second part of the test, *i.e.*, whether "in equity and good conscience" the action should proceed without Ingeniera and Luseme or be dismissed.  See Fed. R. Civ. P. 19(b).

If a court, as here, "determines that a party meets the criteria of Rule 19(a)(1)(A) and (B), but the party cannot be joined," the court must "turn to Rule 19(b) and decide what to do about the problem." Askew, 568 F.3d at 635.  "[D]ismissal is not automatic.  Instead, the court must 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'  Rule 19(b) spells out factors for the court to consider in making that judgment, with an emphasis on practical measures that will allow either the entire suit or part of it to go forward."  Id.  Those factors include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence
would be adequate; and

(4) whether the plaintiff would have an adequate remedy if
the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  No particular weight is given to any of the factors.

See Extra Equipamentos E Exportacao LTDA, 361 F.3d at 361.

"[F]ederal courts are reluctant to dismiss for failure to join where doing

so deprives the plaintiff of his choice of federal forum.  Davis Companies,

268 F.3d at 481, citing Pasco Int'l (London) Ltd. v. Stenograph Corp.,

637 F.2d 496, 501(7th Cir. 1980).

Here, the Magistrate Judge found the first three factors weigh

against continuing the action.  Report and Recommendation, at 16-17.

As stated, neither party has focused their arguments on this conclusion.

Instead, the parties focus on the conclusion in the Report and

Recommendation that the fourth factor weighs heavily against dismissal

because Graneros will have no remedy if the case is dismissed since all of

Graneros' claims will be barred by the statute of limitations.

As the Magistrate Judge noted, Illinois' statute of limitations applies to Graneros' various claims in this case.  See Thomas v. Guardsmark, Inc., 381 F.3d 701, 707 (7th Cir. 2004) ("A federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use.").  Of all of Graneros' claims, the negligence claim has the longest statute of limitations, which is five years.  See Report and Recommendation, at 18, citing 735 ILCS 5/13-205.  That period ran on September 16, 2011, five years after the hurricane. Therefore, if this case is dismissed, Graneros will have no remedy because all of the relevant statutes of limitations have run.[2]

GSI admits that dismissal would result in a "harsh" outcome but suggests that Graneros is responsible for any such outcome.  Graneros waited three years to file the original complaint in the Northern District.

_____

[2] While section 13-217 of the Illinois Code of Civil Procedure allows a party to refile an action within one year after dismissal from federal court for improper venue, that section provides for one, and only one, refiling of a cause of action regardless of whether the applicable statute of limitations has expired.  See 735 ILCS 5/13-217; see also  Flesner v. Youngs Development Co., 145 Ill.2d 252, 253, 582 N.E.2d 720, 721 (1991).  Therefore, Graneros could not use this statute to refile in state court because the Northern District dismissed for improper venue and Graneros refiled the case here.

Moreover, GSI points out that once the Northern District dismissed the case for improper venue, Graneros decided to file the Complaint in this Court.  Therefore, Graneros should suffer the consequences of the choices it made.

Graneros maintains its decision to file the case here is supported by the fact it is prepared to prosecute the case against GSI solely for the engineering, design, and manufacture of the component parts of the Silos and the consumer fraud and misrepresentation counts against GSI. Graneros agrees with the Magistrate Judge's conclusion that the fact Graneros would have no alternative forum weighs in favor of allowing the case to proceed.

The Seventh Circuit Court of Appeals has stated that the availability or unavailability of an alternative forum is a "critical consideration."  Pasco International (London) Ltd. v. Stenograph Corporation, 637 F.2d 496, 500 (7th Cir. 1980).  "If the plaintiff's complaint is dismissed and there is no other court having jurisdiction over the parties as well as over the absent person, the plaintiff's interest

in having the federal forum would strongly influence a court to find that the absent person was not indispensable." Id.  Here, there is no alternative forum because the statutes of limitations have run.  This factor favors allowing the action to proceed without Ingeniera and Luseme.

However, the Seventh Circuit has also stated that "plaintiffs should not be entitled to a federal forum merely because they waited too long to file their complaints in state court." Moore v. Ashland Oil, Inc., 901 F.2d 1445, 1448 (7th Cir. 1990), citing Cloverleaf Standardbred Owners Association, Inc. v. National Bank of Washington, 699 F.2d 1274, 1279 (D.C. Cir. 1983) (case may be dismissed pursuant to Rule 19(b) even if state statute of limitations runs during pendency of appeal).  In Moore, the plaintiffs in the federal case included some, but not all, of the original plaintiffs in the state court case.  Id.  The defendant moved to dismiss the federal complaint under Rule 19(b) because it was a citizen of Indiana and the federal complaint omitted the non-diverse plaintiffs from the state court case who were necessary for a just adjudication of the

issues before the court.  Id. at 1446-1447.  The Seventh Circuit affirmed the dismissal of the federal case under Rule 19.

As the Magistrate Judge concluded, Moore is distinguishable from the case sub judice because in Moore a state court action had commenced before some of the plaintiffs filed the federal case and the state case was still pending at the time the court dismissed the federal action.  See id. at 1447 n.2  Therefore, an alternative forum existed for adjudication of the plaintiffs' claims in Moore at the time the federal case was dismissed. Here, there is no alternative state proceeding and all state statute of limitations have run.

After a de novo review of the relevant factors, the Court agrees with the Magistrate Judge's recommendation that in equity and good conscious this action should proceed.  As the Pasco court stated, "[t]he absence of an alternative forum would weigh heavily, if not conclusively against dismissal."  Pasco, 637 F.2d at 501 n.9.  Therefore, the Court accepts the recommendation that this cause be allowed to proceed without Ingeniera and Luseme.  The Court also notes that shortly after

the Magistrate Judge issued the Report and Recommendation, GSI

protected itself from potential prejudice it may suffer from the absence of

Ingenieria and Luseme by filing a Third Party Complaint against those

two entities under Rule 14.  See Florian v. Sequa Corp., 2002 WL

31844985, at *6 (N.D. Ill. 2002), citing Pasco, 637 F.2d at 503.

　　　　IT IS THEREFORE ORDERED that GSI's Objection to the Report

and Recommendation (d/e 47) is OVERRULED and Magistrate Judge

Cudmore's Report and Recommendation (d/e 43) is ADOPTED.  GSI's

Motion to Dismiss for Failure to Join Necessary and Indispensable

Parties and, in Turn, Lack of Subject Matter Jurisdiction (d/e 5) is

DENIED.  This case is REFERRED back to Judge Cudmore for further

pre-trial proceedings.

IT IS SO ORDERED.

ENTERED: March 27, 2013

　　　　　　FOR THE COURT:

　　　　　　　　　　s/ Sue E. Myerscough
　　　　　　　　SUE E. MYERSCOUGH
　　　　　　　UNITED STATE DISTRICT JUDGE